IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

*Norfolk Division*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 2:19-CR-170-001 |
| | ) | |
| PAUL COSMOS VOSKANYAN, | ) | |
| | ) | |
| Defendant. | ) | |

## **POSITION OF THE UNITED STATES WITH RESPECT TO SENTENCING**

The United States of America, through its attorneys, G. Zachary Terwilliger, United States Attorney, and Kristin G. Bird, Special Assistant United States Attorney, hereby submits its position with respect to the defendant's sentencing factors. In the Presentence Investigation Report (PSR) prepared in this matter, the United States Probation Office determined the applicable advisory guidelines range to be a term of 151 to 188 months' imprisonment.

The defendant's guidelines range stems from a base offense level of 32 because he is attributed with approximately 8,702 kg of converted drug weight. USSG § 2D1.1(a)(5) and (c)(4). The defendant received a two-point enhancement for possessing a firearm. USSG § 2D1.1(b)(1). Additionally, pursuant to USSG §§ 3E1.1(a) and 3E1.1(b), the defendant received a three-point reduction for accepting responsibility; which resulted in a Total Offense Level of 31. The defendant's criminal record established a Criminal History Category of IV.

In accordance with § 6A1.2 of the Sentencing Guidelines Manual and this Court's policy regarding sentencing, the United States represents that it has reviewed the PSR and consulted with the Probation Office and defense counsel. The United States does not dispute any of the sentencing factors set forth in the PSR or the guidelines range calculation.

For the reasons outlined herein and after consideration of the PSR, the relevant conduct

associated with this crime, the defendant's history and characteristics, and the defendant's criminal record, the United States respectfully submits that a sentence of 156 months is appropriate, warranted, and not greater than necessary to accomplish the goals of 18 U.S.C. § 3553(a).

**I.    Motion**

The United States moves this Court, pursuant to U.S.S.G. § 3E1.1(b) and based upon the terms of the binding plea agreement in this case, to grant a one-level reduction in the defendant's offense level for acceptance of responsibility. The defendant timely notified the United States of his intention to enter a plea of guilty, thereby allowing the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources efficiently.

**II.   Background**

On October 23, 2019, the defendant was charged with a single count of Possession with Intent to Distribute 280 Grams or More of Cocaine Base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). A conviction for this offense carries a ten-year mandatory minimum prison sentence.

On July 8, 2020, the defendant entered a guilty plea to Count One of the Indictment before the Honorable Raymond A. Jackson, United States District Judge. He is scheduled to appear before this Court for sentencing on November 10, 2020.

**III.  Position on Sentencing and Argument**

"[I]n imposing a sentence after *Booker*, the district court must engage in a multi-step process. First, the court must correctly determine, after making appropriate findings of fact, the applicable guideline range." *United States v. Moreland*, 437 F.3d 424, 432 (4th Cir. 2006). "Next, the court must 'determine whether a sentence within that range serves the factors set forth in § 3553(a) and, if not, select a sentence [within statutory limits] that does serve those factors.'" *Id.*

(quoting *United States v. Green*, 436 F.3d 449, 455 (4th Cir. 2006)).  In making this determination,

> a sentencing court must consider "the nature and circumstances of the offense and the history and characteristics of the defendant" and the need "to reflect the seriousness of the offense," provide "just punishment," "afford adequate deterrence," "protect the public," and "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."

*United States v. Hampton*, 441 F.3d 284, 287 (4th Cir. 2006) (quoting 18 U.S.C. § 3553(a)).

      A.      <u>Nature and Circumstances of the Offense</u>

For approximately fourteen months prior to his April 2019 arrest, the defendant was wanted on outstanding charges stemming from an incident that occurred in Virginia Beach.  *See* PSR ¶¶ 6, 44.  Prior efforts to serve him had failed.  Then, on April 24, 2019, law enforcement obtained information indicating the defendant was at a hotel in the City of Chesapeake.  Officers eventually observed the defendant exit the hotel and make his way towards a vehicle located in the parking lot, while carrying a large duffel bag.  PSR ¶ 6.  Before he could enter the vehicle, officers moved to take the defendant into custody on the outstanding warrants.

Once in custody, officers recovered 630.57 grams of "crack" cocaine and a staggering $173,475.00 in U.S. Currency from inside the duffel bag.  PSR ¶¶ 6, 8.  A search of his person yielded an additional $7,165.00 in U.S. Currency and four cell phones.  PSR ¶ 6.  The vehicle was ultimately searched as well.  Officers recovered a Glock 17 9mm firearm, ammunition, 16.06 grams of marijuana, and six more cell phones.  PSR ¶¶ 6, 8.

The currency was converted to drug weight for purposes of the guidelines which was appropriate under the circumstances.  *See* PSR ¶ 9.  One gram of "crack" cocaine has a street value of $100 so the currency recovered converted into 1.8 kilograms of "crack" cocaine.  *Id*.  The fair and logical inference from the evidence in this case is that the defendant was a prolific and highly successful distributor of "crack" cocaine.

B.       <u>History and Characteristics of the Defendant</u>

1.       Personal and Family Data

The defendant is 35 years old and enjoys general good health. PSR ¶ 66. He has no history of serious or chronic medical conditions. Moreover, he has no history of mental or emotional issues. PSR ¶ 67. He has one son but has never been married. PSR ¶ 63.

The defendant moved to Virginia Beach at nine years old after his father was stationed here by the United States Navy. PSR ¶¶ 58-59. The PSR suggests the defendant had a stable upbringing, having been raised by his mother and father; although they may have struggled financially at times. PSR ¶¶ 59-60.

The defendant experienced difficulty with high school, and a period of incarceration at fifteen, but he did graduate with a 2.6809 GPA in 2003. PSR ¶ 72. After graduation, there does not appear to be any effort by this defendant to further his education, learn a trade, or secure steady employment. According to the defendant, he worked some odd jobs but was consistently unemployed during the five years leading up to his arrest. PSR ¶¶ 75-76.

Rather than obtain lawful employment, the defendant, because ***<u>"he hated being poor,"</u>*** has spent the better part of his adult life profiting from the distribution of illicit substances. *See* PSR ¶ 61. There is some history of prior substance abuse treatment, which he was referred to while on supervised probation for state convictions. PSR ¶ 69. The most recent bout of treatment ended with his unsuccessful discharge in 2015. *Id*. Despite his failures in that program, the defendant says he last used cocaine in 2008 and marijuana in 2016 or 2017. PSR ¶ 68. Given the fact that the defendant has not used illicit substances during the last three or four years, the clear conclusion is that he was not selling drugs to support a habit of his own.

### 2. Criminal History

The defendant's criminal history takes up fourteen of the twenty-eight pages comprising the PSR. Over the last twenty years, the defendant has come into contact with law enforcement twenty-five times. His first contact with the criminal justice system occurred at the age of fourteen when he was charged with petit larceny. PSR ¶ 47. The charged was deferred and ultimately dismissed after compliance with court conditions. *Id.*

Approximately one year later, the defendant was charged with felony malicious wounding by mob after he and several other individuals attacked a person in a park. PSR ¶ 48. The defendant was committed to the Department of Juvenile Justice but was released early to juvenile parole in 2002. *Id.* Ultimately, his compliance and ability to maintain good behavior led to the dismissal of this serious felony charge. *Id.*

Then in 2003, the defendant was charged four times with driving without a valid operator's license. PSR ¶¶ 30,-32, 50. The latter of these offenses came with charges of possession of marijuana, receiving stolen goods, disregarding a law enforcement officer, fraudulent use of a birth certificate or driver's license, and credit card theft. PSR ¶ 32. The defendant was ultimately convicted of the license offense, possession of marijuana, and disregarding a law enforcement officer. *Id.* Additionally, he was brought back to court on a good behavior violation for these offenses, for which he served twenty days in jail. *Id.*

In 2004, he came into contact with law enforcement four times. PSR ¶¶ 33-35, 51. The first three contacts were for driving while suspended or revoked. PSR ¶¶ 33-35. While this behavior may seem relatively minor at first glance, it strongly suggests that we are dealing with an individual who will not abide by laws or court orders. He was convicted of these offenses and served a total of thirty days in jail. *Id.* The fourth set of offenses were *nolle prossed* but not before

the defendant incurred a charge for violating the terms and conditions of his release.  PSR ¶¶ 36, 51.  He served ten days in jail for the violation.

Just four months later, in July of 2005, the defendant was again facing incarceration for disorderly house, possession of marijuana, and possession of a controlled substance with the intent to distribute.  PSR ¶ 37.  Post-arrest, the defendant tried to discard twenty "crack cocaine rocks" in a police cruiser.  *Id.*  While this charge was pending, he failed to appear for a court hearing and incurred an additional charge in Chesapeake.

In Chesapeake, the defendant was charged with felonious possession of marijuana with intent to distribute offense; however, it was reduced significantly to a misdemeanor.  PSR ¶ 38.  Then, in November 2006, he was charged with the failure to appear.  It was not until he was stopped for reckless driving in February 2007 that he was arrested and brought back to Virginia Beach to answer for the July 2005 offenses.  *See* PSR ¶ 39.

Once he finally appeared, the defendant was convicted of felony possession with intent to distribute and possession of marijuana.  PSR ¶ 37.  He was ordered to serve a total of five years and sixty days in prison, with four years and two months suspended, leaving one year as the active period of incarceration.  *Id.*  As a condition of the suspended time, he was placed on supervised probation and ordered to be of good behavior for four years.  *Id.*

On January 6, 2008, the defendant began supervised probation but his compliance was "marginal."  *See* PSR ¶¶ 37, 39.  Undoubtedly, this was due, at least in part, to him coming into contact with law enforcement three times in 2008.  *See* PSR ¶¶ 40, 53-54.  The first of these contacts, charges of abduction and assault and battery of a family or household member, came in April of 2008, just three months after he was placed on probation.  *See* ¶¶ 39, 53.  Coincidentally, the named victim in that case was the registered owner of the vehicle the defendant was using at

the time of his arrest for the instant offense. The domestic violence offense was ultimately *nolle prossed*. *Id*.

In September of 2008, the defendant was charged with quite the assortment of offenses: grand larceny, carrying a concealed weapon, possession of a firearm by a convicted felon, felony eluding, driving while suspended, and receipt of a stolen firearm. PSR ¶¶ 40, 54. He was convicted of felony eluding and driving while suspended or revoked; and, he was ordered to serve an active sentence of one year. PSR ¶ 40.

In August of 2013, the defendant was charged with driving while under the influence of alcohol, refusal, driving while suspended or revoked, and reckless driving. PSR ¶ 41. He was convicted of the driving while under the influence offense and given all suspended time, conditioned upon two years of supervised probation and his completion of the Virginia Alcohol Safety Awareness Program. *Id*. There is no verification that he completed that program. *Id*.

He was charged with offenses in 2014 and 2015 that were ultimately *nolle prossed* or dismissed. PSR ¶¶ 55-56. However, just one month after the last dismissal, the defendant was again before a court for assault and battery of a law enforcement officer and obstruction. PSR ¶ 43. Narcotics and a firearm were involved in this incident, but the defendant appears to just have been the driver of a vehicle in which a narcotics dealer was riding. *Id*. Rather than be respectful of officers and the job they are tasked with doing, he decided to accost and strike one of the investigators. *Id*. The defendant was ultimately convicted of the misdemeanor obstruction offense and ordered to serve twenty days in jail. *Id*.

Then, in February of 2018, the defendant was again charged with felony offenses against law enforcement. PSR ¶ 44. Once again, firearms and possible narcotics infractions were investigated. There were two firearms found in a car the defendant had left behind. *Id*. There was

7

one found in the driver's side door of the vehicle, which had been where the defendant was sitting, and one found in the passenger side door. These were the warrants that were outstanding when law enforcement encountered the defendant on April 24, 2019. *Id*. The charges were reduced and the defendant was ultimately ordered to serve one year in jail for misdemeanor animal cruelty and eluding. *Id*.

### C. Other Factors to Be Considered Under Section 3553(a)

General and specific deterrence, the seriousness of the offense, promoting respect for the law, providing just punishment, and public safety all support a sentence of 156 months' imprisonment. The defendant sold drugs because, in his words, he did not like being poor. When he was arrested, he had ten cell phones, significantly large quantities of narcotics and cash, and a firearm. This defendant has made a profession out of dealing narcotics and profiting off of the addictions of others. The United States respectfully submits that a sentence of 156 months is not disproportionate to the conduct nor would it result in a disparity in sentencing.

Specific deterrence is a lofty goal in this case but one that will be well-served by the recommended sentence. In reviewing the PSR, there simply is no reason, mitigation, or excuse justifying the defendant's decision to proceed down this path in life. He has spent the last twenty years committing crimes; and, up to this point, the criminal justice system has been more than gracious and lenient towards the defendant. Felonies have been reduced or dismissed; sentences have been negligible; and no effort was made to up the ante when he continued to come back before courts with similar charges time and time again.

Furthermore, on multiple occasions, the defendant has acted in a manner that unequivocally confirms he has zero respect for our laws, law enforcement, or the authority of the courts. Jail time, supervised probation, and court supervision have repeatedly failed to deter the defendant

from committing new crimes – some of them repeatedly. The United States respectfully submits that a sentence in line with its recommendation will best serve the interests of deterring this defendant from continuing down his chosen path upon his release.

Additionally, general deterrence, public safety, and promoting respect for the law are paramount. Narcotics distribution, firearms, and the points at which they intersect, have long been responsible for the scourge that plagues so many of our communities. The recommended sentence will certainly serve to protect the public from this defendant. Moreover, for those who might admire the defendant and people like him, perhaps they will come to appreciate that this conduct is not acceptable, not worthy of admiration, and will result in significant criminal penalties.

### D.  Opposition to Downward Variance

The United States would oppose a downward variance in this particular case for several reasons, most of which have been stated above. The defendant is a repeat offender with an extremely lengthy criminal history. Respectfully, a downward variance would not be appropriate in this case and it would send the wrong message to the community.

## IV.  Conclusion

Taking into consideration the defendant's conduct, his criminal and personal history, and all the other 3553 factors, the United States respectfully recommends that a sentence of 156 months' imprisonment is appropriate and would be sufficient, but not greater than necessary, to accomplish the goals of 18 U.S.C. § 3553(a).

Respectfully submitted,

G. Zachary Terwilliger
United States Attorney

By:     /s/
Kristin G. Bird
Special Assistant United States Attorney
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, VA 23510
Office Number: 757-441-6331
Facsimile Number: 757-441-6689
kristin.bird@usdoj.gov

## Certificate of Service

I certify that on November 3, 2020, I electronically filed a copy of the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to counsel of record.

I further certify that on November 3, 2020, I sent by electronic mail a true and correct copy of the foregoing to the following:

**Shannon E. Gerard**
United States Probation Officer
600 Granby Street
Suite 200
Norfolk, Virginia  23510

By: _____/s/_____

Kristin G. Bird
Special Assistant United States Attorney
United States Attorney's Office
101 W. Main Street, Suite 8000
Norfolk, Virginia  23510
Office:  (757) 441-6331
Fax:     (757) 441-6689
Email:   kristin.bird@usdoj.gov